NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARY GARAS, PETITIONER, v. UNITED LEAD WORKS, A CORPORATION, RESPONDENT.

For the petitioner, *David T. Wilentz,* through *James F. Patten.*

For the respondent, *John E. Toolan.*

I do find and determine as follows:

\*      \*      \*      \*      \*      \*      \*

*First.* That James Garas, now deceased, was on December 11th, 1926, in the employ of the respondent, United Lead

Works, employed as a laborer and engaged in coopering barrels and loading said barrels for shipment on railroad cars, which said employment was subject to section 2, chapter 95, laws of 1911, commonly known as the Workmen's Compensation act, and the supplements and amendments thereto.

*Second.* That the said James Garas quit work on December 11th, 1926, alleging that he was sick. Dr. Isidore Siegel was called in attendance and treated the said James Garas for heart and kidney trouble. The deceased remained under the care of Dr. Siegel from December 11th, 1926, until April 26th, 1927, on which date he died. The death certificate indicates that the cause of death was chronic interstitial nephritis Claim is now made and at the hearing Dr. Siegel testified that the said James Garas died of lead poisoning and that the heart trouble and kidney trouble from which the said James Garas was suffering was induced and caused by lead poisoning. Dr. William E. Ramsay, a physician called by the respondent, testified that he had attended the deceased on a number of occasions prior to his death, and on one occasion about a month prior to his death; that the deceased was suffering from a chronic heart and kidney condition that could in no wise be attributable to lead poisoning, and in fact the deceased had not and never had been afflicted with lead poisoning. Respondent offered in evidence a number of prescriptions given by Dr. Siegel in treating the deceased as well as a written certificate signed by Dr. Siegel dated March 17th, 1927, in which Dr. Siegel over his own signature said that the deceased was suffering from kidney trouble "associated with a weak heart." There is no mention in this certificate of lead poisoning. Dr. Siegel on the witness stand admitted that none of the prescriptions offered in evidence and which covered the entire course of the last illness of the decedent were ever for lead poisoning. Dr. Siegel in fact testified that he never treated the deceased for lead poisoning. Practically all of the testimony offered by witnesses, both for the petitioner and respondent, indicated that the deceased rarely, if ever, came in contact with lead and that there was little opportunity for him to become afflicted with lead poisoning.

*Third.* In view of all the proofs, it is impossible for the court to finally determine either that the deceased was ever exposed to lead in sufficient quantities to become afflicted with lead poisoning, or that the deceased had lead poisoning or that lead poisoning was the cause, either directly or remotely, of the death of the said James Garas. The clear preponderance of the evidence in all these respects was that the petitioner entirely failed to carry the burden of proof and establish that the deceased was either suffering or died from lead poisoning within the contemplation or meaning of section 2, chapter 95, of the laws of 1911, and the various supplements and amendments thereto, known as the Workmen's Compensation act.

\*      \*      \*      \*      \*      \*      \*

HARRY J. GOAS,
*Deputy Commissioner.*